**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

James E. Rand

     v.                                        Civil No. 18-cv-1211-PB

Helen Hanks, Commissioner, New
Hampshire Department of
Corrections; Michelle Edmark,
Warden, New Hampshire State
Prison for Men; Major Jon Fouts;
and Christopher Kench

**REPORT AND RECOMMENDATION**

Through the vehicle of 42 U.S.C. § 1983, pro se plaintiff
James Rand, an inmate at the New Hampshire State Prison for Men
("NHSP"), has sued four NHSP officials for violating his
constitutional right to access the courts.  Before this
magistrate judge for a report and recommendation are: (1)
plaintiff's motion for a preliminary injunction; and (2)
defendants' motion to dismiss for failure to state a claim upon
which relief can be granted.  Each motion has been duly opposed.
For the reasons that follow, defendants' motion to dismiss
should be granted and, as a consequence, plaintiff's motion for
a preliminary injunction should be denied.

## I. Motion to Dismiss

### A. The Legal Standard

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff's] favor," Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018) (quoting Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52-53 (1st Cir. 2013)).  Then, when focusing "on the non-speculative, non-conclusory facts and reasonable inferences implied by those facts, [the court must] ask whether it is plausible, as opposed to merely possible, that [the] plaintiff's complaint narrates a claim for relief." Lemelson, 903 F.3d at 23 (citation omitted).

### B. Background

The facts recited in this section are drawn from plaintiff's complaint, see id., come from documents that are "fairly incorporated into [his] complaint," Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018) (citations omitted), or are "matters of public record, and facts susceptible to judicial notice," Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc., 920 F.3d 111, 114 (1st Cir. 2019) (quoting Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).

On April 5, 2012, Rand was arraigned in the Concord District Court ("CDC") on four misdemeanor charges: two counts of false swearing and one count each of making a false report and resisting arrest.  Each of those crimes is an unclassified misdemeanor.  See N.H. Rev. Stat. Ann. ("RSA") §§ 641:2, 641:4, and 642:2.[1]  Three days before Rand was arraigned, the Concord City Prosecutor executed a Notice of Intent to Seek Class A Misdemeanor Penalties for the unclassified misdemeanors with which Rand was being charged.[2]  That form bears the stamp of the CDC clerk of court.  The day after Rand was arraigned, he was bound over to the Merrimack County Superior Court ("MCSC").

In June of 2012, the Assistant County Attorney filed informations in the MCSC charging Rand with one count each of false swearing, making a false report, and resisting arrest. After a jury trial, Rand was found guilty of his three misdemeanor charges as well as one felony count of robbery.  In

---

[1] An unclassified misdemeanor is one for which the statutory definition does not expressly designate it as either a Class A or a Class B misdemeanor.

[2] The New Hampshire criminal code provides that class A misdemeanor sentences may be imposed when a defendant has been convicted of an unclassified misdemeanor if certain conditions have been met, one of which is the filing, by the State, of "a notice of intent to seek class A misdemeanor penalties on or before the date of arraignment . . . on a form approved in accordance with RSA 490:26-d," RSA 625:9, IV(c)(2).

April of 2013, Rand was sentenced to one year of confinement for
each misdemeanor,[3] and the sentencing judge specified that Rand's
misdemeanor sentences were to be served concurrently with each
other and with at least one other sentence he had received.
Rand appealed his convictions to the New Hampshire Supreme Court
("NHSC"), which affirmed.  See State v. Rand, Nos. 2013-0273 &
2013-0274, 2014 WL 11485797, at *1 (N.H. Dec. 4, 2014).

    In March of 2017, Rand filed, in the MCSC, a motion to
strike the imposition of class A misdemeanor sentences.  In
October of 2017, the Assistant County Attorney filed an
objection, to which he attached a copy of the notice of intent
that had been filed in the CDC.  Judge Kissinger denied Rand's
motion in an order that stated: "Denied.  See attachment to
state's objection."  Pl.'s Surreply, Attach. 2 (doc. no. 16-2) 3
of 60.  The MCSC clerk's notice of decision is dated October 16,
2017.  See id.  On October 30, Rand filed a motion for
reconsideration that Judge Kissinger denied in a one-word order
on November 20, 2017.[4]

---

[3] Under the New Hampshire criminal code, imprisonment may be
imposed upon conviction of a class A misdemeanor, but not upon
conviction of a class B misdemeanor.  See RSA 625:9, IV.

[4] Rand has long asserted that the date on Judge Kissinger's
order is illegible, but to the court's eye, it is not.  In any
event, the MCSC Case Summary lists the date of Judge Kissinger's
order as November 20, 2017.

In his complaint, Rand alleges that on December 11, 2017, he filed a Rule 7 Notice of Discretionary Appeal with the NHSC by depositing it in the prison's mail system.  However, he begins the argument section of his objection to defendants' motion to dismiss in the following way:

> The plaintiff **HAD** within his **physical possession** a copy of the **rough draft** of his **"Discretionary Appeal"** which was **drafted** for **December 11, 2017**, however **WAS NOT** filed upon this date due to the factor that the plaintiff sought relief from the Merrimack County Superior Court, when he filed a **"Pro Se Motion for Reconsideration"** which address[ed] the issue of **"prosecutorial misconduct"** that **WAS NOT** covered within his original **"Motion To Strike".**[5]

Pl.'s Obj. (doc. no. 13) ¶ 28 (emphasis in the original).  So, the date on which Rand claims to have deposited his notice of appeal in the prison mail system is not clear, but he does not claim to have done so any earlier than December 11.  Be that as it may, his notice of appeal is dated January 4, 2018.

---

[5] Rand appears to assert that the Assistant County Attorney committed prosecutorial misconduct by failing to inform Judge Kissinger that: (1) the Concord City Prosecutor nol prossed his misdemeanor charges in the CDC; and (2) he, the Assistant County Attorney, did not file a notice of intent to seek Class A misdemeanor penalties in the MCSC.  Rand seems to argue that once the Concord City Prosecutor nol prossed the charges against him in the CDC, the Assistant County Attorney was obligated to file a new notice of intent in the MCDC.  However, RSA 625:9, IV(c) does not appear to support that argument, and requires only the filing of a notice of intent on or before the date of arraignment, which was April 5, 2012.

In his notice of appeal, Rand claimed that Judge Kissinger erred by: (1) ruling that he had been served with notification of the prosecution's intent to seek class A misdemeanor penalties for the unclassified misdemeanors with which he had been charged; (2) neglecting to rule that the State's objection to his motion to strike was untimely; (3) failing to give him a hearing on his motion to strike; (4) failing to rule that the Assistant County Attorney had violated his constitutional rights; and (5) denying his motion for reconsideration in a one-word order.

In an order dated January 30, 2018, the NHSC dismissed Rand's appeal as untimely, explaining that: (1) his notice of appeal was due on November 15, 2017, <u>i.e.</u>, 30 days after Judge Kissinger denied his motion to strike; (2) his motion to reconsider Judge Kissinger's order was untimely, under the New Hampshire Rules of Criminal Procedure and, as a consequence, did not stay the running of the appeal period; and (3) his notice of appeal was filed on January 8, more than a month after the deadline for filing it had passed.

On January 25, 2018, Rand was moved to a new housing unit in the NHSP.  In the process, his "criminal discovery for eight (8) felonies and three (3) misdemeanors was confiscated," Compl. (doc. no. 1) ¶ 14 (emphasis omitted), pursuant to NHSP policy,

6

due to its volume.[6]   That was problematic, in plaintiff's view,
because defendants had "a strong lack of understanding that [he]
was challenging his convictions and that his 'criminal
discovery' was an important key to these challenges," id. ¶ 15
(emphasis omitted).

In April of 2018, Rand filed a petition for a writ of
certiorari in the United States Supreme Court ("SCOTUS") and
also filed a motion for an extension of the deadline for filing
such a petition.   On May 17, he received notice from the Court
that his petition did not comply with SCOTUS rules, but that he
was being granted a 60-day extension of time to file an
acceptable petition.

From the time his criminal discovery was confiscated
through June of 2018, Rand made various unsuccessful attempts to
have his paperwork returned to him, and by late June, his
extended deadline for filing a SCOTUS petition had passed.

In July of 2018, Rand filed a motion to compel discovery in
the U.S. Supreme Court in which he asked the Court to: (1) order
NHSP officials to return his criminal discovery to him; and (2)

---

[6] Plaintiff is quite specific and persistent in using the
term "criminal discovery," rather than something more generic,
such as "legal material," to describe the paperwork that was
confiscated from him.  Because that usage appears to have been
intentional, the court will follow plaintiff's lead and refer to
his confiscated paperwork as criminal discovery.

grant him a further extension of the deadline to file his
petition.  That motion was returned to him in August, for
failure to comply with SCOTUS rules.  Thereafter, Rand continued
to use the prison grievance procedure to seek the return of his
criminal discovery.

Based upon the foregoing, plaintiff filed this action,
claiming that defendants violated his constitutional right of
access to the courts by preventing him from: (1) filing a timely
notice of appeal in the NHSC, by interfering with his legal mail
in December of 2017; and (2) filing a timely SCOTUS petition, by
denying him access to his criminal discovery.  For those
purported constitutional violations, plaintiff seeks a variety
of relief, including: (1) a declaratory judgment that defendants
violated his constitutional rights; (2) an injunction against
the confiscation of his criminal discovery; (3) compensatory
damages in the form of attorneys' fees and costs; and (4)
punitive damages.

### C. Discussion

Defendants move to dismiss, arguing that: (1) even if Rand
had filed his NHSC notice of appeal on the earliest possible
date alleged in his complaint, December 11, 2017, it would have
been untimely by nearly a month; and (2) Rand's claim that
defendants denied him access to the U.S. Supreme Court fails

because he has not alleged how his confiscated paperwork was necessary to the SCOTUS petition he wanted to file and has not identified a nonfrivolous claim he would have asserted in that petition.  In addition, defendants argue that plaintiff's claim for monetary damages is barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In this section, the court begins with the relevant law and then turns to each of plaintiff's two claims.

### 1. The Relevant Law

It is well "established . . . that prisoners have a constitutional right of access to the courts," Bounds v. Smith, 430 U.S. 817, 821 (1977), and that their access must be "adequate, effective, and meaningful," id. at 822.  For a prisoner to state a claim that his constitutional right of access to the courts has been violated by prison officials, he must allege facts showing that he suffered an actual injury in his ability to pursue a claim that was not frivolous in a matter that he had a right to litigate.  See Lewis v. Casey, 518 U.S. 343, 352, 354-55 (1996).

> In other words, plaintiff must allege facts that, if
> taken as true, would show "'that an actionable claim
> has been lost or rejected or that presentation of the
> claim is currently being prevented'" due to
> defendants' actions.  Guglielmo v. N.H. State Prison,
> 111 F.3d 122, 1997 WL 205290, at *1, 1997 U.S. App.
> LEXIS 8616, at *2-*3 (1st Cir. Apr. 25, 1997)
> (unpublished table decision) (citing Lewis, 518 U.S.
> at 356).  "[T]he underlying cause of action, whether
> anticipated or lost, is an element that must be

> described in the complaint, just as much as
> allegations must describe the official acts
> frustrating the litigation."  Christopher v. Harbury,
> 536 U.S. 403, 415 (2002).

Gibbs v. Zenk, No. 17-cv-299-PB, 2018 WL 3946517, at *4 (D.N.H.
June 28, 2018), R. & R. approved by 2018 WL 3945869 (Aug. 16,
2018) (parallel citation omitted and emphasis added).

### 2. Access to the NHSC

Defendants argue that plaintiff's claim that they denied
him access to the NHSC should be dismissed because the conduct
he alleges as the basis for that claim – interfering with the
delivery of his notice of appeal to the NHSC – took place after
the deadline for filing that notice had already passed.  That
is, defendants argue that their alleged conduct did not cause
plaintiff to lose an actionable claim because his appeal became
legally inactionable before he ever placed his notice of appeal
in the prison mail system.  The court agrees.

Under the rules of the NHSC, the time for filing a notice
of appeal such as the one at issue in this case runs for "30
days from the date on the clerk's written notice of the
decision."  N.H. Sup. Ct. R. 7(1)(B).  The date on the clerk's
written notice of Judge Kissinger's decision to deny Rand's
motion to strike is October 16, 2017.  That gave Rand until
November 15, 2017, to file his notice of appeal.  His complaint
alleges that he placed his notice of appeal in the prison mail

on December 11, 2017, and in his objection to defendants' motion
to dismiss, he says that he filed it even later than that.
Because Rand's notice of appeal was untimely as of November 16,
nothing that defendants did in the second half of December could
possibly have caused him to lose the claims he asserted in his
appeal.

That said, in the paragraph in his objection in which he
disclaims his allegation that he filed his notice of appeal on
December 11, plaintiff also mentions his motion for
reconsideration.  And, indeed, "[a] timely filed post-decision
motion stays the running of the appeal period."  N.H. Sup. Ct.
R. 7(1)(C).  But, on the other hand, "[u]ntimely filed post-
decision motions will not stay the running of the appeal period
unless the trial court waives the untimeliness within the appeal
period."  Id.  Moreover, "[i]n the absence of an express waiver
of the untimeliness made by the trial court within the appeal
period, the appeal period is not extended even if the trial
court rules on the merits of an untimely filed post-decision
motion."  Id.

According to Rule 43(a) of the New Hampshire Rules of
Criminal Procedure, "[a] motion for reconsideration or other
post-decision relief shall be filed within ten days of the date
on the clerk's written notice of the order or decision."  Thus,

11

Rand had from October 16, 2017, until October 26 to file a
timely motion for reconsideration.  However, he alleges that he
filed his motion for reconsideration on October 30, see Compl.
(doc. no. 1) ¶ 4, making it untimely.  Furthermore, while Judge
Kissinger arguably denied Rand's motion for reconsideration on
the merits, he did not do so within the appeal period,[7] and he
did not expressly waive the untimeliness of Rand's filing either
during or after the appeal period.  Thus, Rand has alleged no
facts that would support a determination that the appeal period
was stayed by his motion for reconsideration.

    Because the facts alleged in plaintiff's complaint
establish that his notice of appeal was untimely as of November
15, 2017, and because the conduct for which he seeks to hold
defendants liable took place no earlier than December 11,
plaintiff has not alleged that defendants caused him to lose an
actionable appeal to the NHSC.  Cf. Harper v. Dinella, 589 F.
App'x 67, 69 (3d Cir. 2015) (explaining that because the only

---

[7] As the court has noted, plaintiff makes much of the
purported illegibility of the date that Judge Kissinger wrote on
the order denying his motion for reconsideration.  While that
notation is legible to the court, and says "11/20/12," the only
arguably illegible part of the date is the "11."  But, given
that Rand filed his motion for reconsideration on October 30,
the only other number the allegedly illegible "11" could be is
"12," which is also outside the appeal period.  Thus, there is
nothing about the purported illegibility of Judge Kissinger's
date that works to plaintiff's advantage.

discernable claims in underlying action were time-barred, inmate
failed to identify any nonfrivolous claim upon which to base his
access to the courts claim).  Accordingly, Rand's claim that
defendants denied him access to the NHSC should be dismissed.

### 3. Access to the U.S. Supreme Court

Defendants argue that plaintiff's claim that they denied
him access to the U.S. Supreme Court should also be dismissed
because plaintiff has neither: (1) alleged how the criminal
discovery that they confiscated was necessary for him to draft
the SCOTUS petition he wanted to file; nor (2) identified a
nonfrivolous claim he would have asserted in his petition.  As
for the nature of the issue(s) he would have appealed to the
Supreme Court, plaintiff says nothing in his objection.  As for
his need for access to his confiscated criminal discovery to
draft a SCOTUS petition, he makes only this argument:

> "[I]t is beyond dispute that **"discovery"** within a
> **"Criminal"** or **"Civil"** matter[] [is] the **CORE** of **ANY**
> legal proceeding which the law is **well-settled** that
> cases have been WON and **LOST** because of the
> **"discovery"**, or, lack of **"discovery"**.  Nevertheless,
> it [has] been clearly stated within the **Federal Rules
> of Civil Procedure Rule 26**, the **VERY** items that are
> involved within **"discovery"** in a legal proceeding, as
> well as **Federal Rules of Criminal Procedure Rule 16**,
> provide an itemize[d] listing of the legal material
> contain[ed] within a **"discovery file"**, therefore, when
> you consider the items that are within a **"discovery
> file"** it become[s] clear that this **"legal
> documentation"** is [an] important part of **ANY "legal"**
> proceeding.

Pl.'s Obj. (doc. no. 13) ¶ 38 (emphasis in the original).

As the court has noted, to properly state an access to the
courts claim, a plaintiff must describe the claim that he
purportedly lost as a result of the defendant's actions.  See
Gibbs, 2018 WL 3946517, at *4 (citing Christopher, 536 U.S. at
415).  Allegations describing the lost claim are necessary
because a plaintiff asserting an access to the courts claim must
prove that the claim he lost was not frivolous, see Lewis, 518
U.S. at 353, and was actionable, see id. at 352; Guglielmo, 1997
WL 205290, at *1.  Here, however, plaintiff's complaint goes no
further than to allege that he wanted to mount a "collateral
attack" on his criminal convictions for which he needed access
to his "criminal discovery."  But he does not anywhere identify
any specific legal issue on which he intended to base that
collateral attack.  Then, when alerted to the deficiency in his
pleading by defendants' motion to dismiss, he merely contends
that discovery materials are, as a matter of law, necessary for
any legal proceeding.  But he does not say how his criminal
discovery could even be relevant to the only decision he could
have appealed, the NHSC's determination that his notice of
appeal was filed too late.

Standing alone, the lack any description of the issue(s)
that Rand intended to appeal to the U.S. Supreme Court is fatal

to his second claim; plaintiff has given the court no basis for finding that the appeal he did not file would have been nonfrivolous.  See, e.g., Gibbs, 2018 WL 3946517, at *5 (recommending dismissal where plaintiff had "not pleaded any facts . . . to state a claim that his planned state appeal is nonfrivolous, which is an element of an access to the courts claim"); Beaulieu v. N.H. Governor, No. 16-cv-471-JD, 2017 WL 6767294, at *9 (D.N.H. Nov. 30, 2017) (same), R. & R. approved by 2018 WL 262827 (Jan. 2, 2018); Hart v. Goulette, No. 16-cv-028-PB, 2016 WL 4575581, at *4 (D.N.H. July 22, 2016) (same), R. & R. approved by 2016 WL 4574662 (Aug. 31, 2016). Moreover, there is no way that plaintiff could correct that deficiency even if the court were to give him an opportunity to amend his complaint.  The only issue that Rand could have appealed to the U.S. Supreme Court is the NHSC's ruling that he filed his notice of appeal too late.  But this court can see nothing in that ruling that would support a nonfrivolous appeal to the Supreme Court.

In short, because plaintiff has not alleged facts sufficient to support a claim that defendants denied him access to the U.S. Supreme Court, and cannot do so, that claim should be dismissed.

## II. Preliminary Injunction

Having recommended the dismissal of plaintiff's two access to the courts claims, this court turns, briefly, to plaintiff's motion for a preliminary injunction.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The first two factors, likelihood of success on the merits and irreparable harm, are "'the most important' in the calculus." Bruns v. Mayhew, 750 F.3d 61, 65 (1st Cir. 2014) (citation omitted).

Because Rand has failed to state a claim upon which relief can be granted, for the reasons described in the previous section, he has, necessarily, failed to carry his burden of showing that he has a likelihood of success on the merits. Accordingly, his request for a preliminary injunction should be denied.

The court concludes by noting that while plaintiff devotes a great deal of attention to defendants' confiscation of his criminal discovery and to the NHSP's policies concerning the amount of legal paperwork that inmates may keep in their cells,

he has no right to maintain paperwork in his cell that is legally enforceable outside the context of a viable access to the courts claim.  As the Court explained in <u>Lewis</u>:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

518 U.S. at 351 (parallel citation omitted).  Because Rand's claim that the confiscation of his criminal discovery hindered his access to the U.S. Supreme Court is meritless, he has no platform for litigating the NHSP's policies and procedures governing the amount of legal paperwork an inmate may keep in his cell.

### III. Conclusion

For the reasons detailed above, defendants' motion to dismiss, document no. 9, should be granted, and plaintiff's motion for preliminary injunctive relief, document no. 3, should be denied.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


_____
Andrea K. Johnstone
United States Magistrate Judge

May 15, 2019

cc:  All pro se parties and counsel of record